(103 So. 447)

**Ex parte TODD SHIPBUILDING & DRY DOCKS CO.** (1 Div. 337.)

(Supreme Court of Alabama. March 19, 1925.)

**1. Master and servant ⬡403—Burden on employer to show proper construction, insulation, and safety of electrical appliances.**

Circumstances of employee's death in using employer's electrical appliance *held* to impose upon employer burden of showing that appli-

ance was properly constructed and insulated, and incapable of communicating a current of deadly force to employee's body.

**2. Master and servant ⬡405(4)—Finding of death from electrical shock sustained.**

Evidence *held* to sustain finding that employee was killed by an electrical shock, and hence by an accident arising out of and in the course of his employment.

**3. Master and servant ⬡388—Compensation not payable concurrently to more than one class of dependents.**

Under Workmen's Compensation Act and specifically Code 1923, §§ 7553, 7556, 7558, 7560, compensation is not payable concurrently to more than one of the classes or grades of dependent relatives designated in section 7556, and allowance to grandmother in addition to allowance to mother was erroneous.

**4. Master and servant ⬡388—Compensation payable so long as any named dependent survives throughout period of 300 weeks.**

Compensation is payable under Workmen's Compensation Act, specifically Code 1923, §§ 7553, 7556, 7558, 7560, and 7564, read in connection with section 7556, so long as any named dependent survives throughout period of 300 weeks.

**5. Master and servant ⬡388—Grandmother entitled only to 20 per cent. of weekly wage, in event she survives dependent mother.**

Deceased's dependent grandmother, in event she survives his dependent mother dying within 300 weeks during which compensation is payable, *held* in view of Code 1923, § 7556, not entitled to amount awarded to mother, but only to 20 per cent. of weekly wage.

Certiorari from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Petition of the Todd Shipbuilding & Dry Docks Company for certiorari to the Circuit Court of Mobile County, to review the finding and judgment of that court in a proceeding, under the Workmen's Compensation Act, by Alma De Witt and Carrie Holt, mother and grandmother of J. T. De Witt, deceased employé of petitioner. Corrected and affirmed.

The trial judge made a special finding of facts, in substance, as follows:

"The plaintiffs offered testimony that decedent was a healthy, vigorous man, who had had no recent illness, and who had never had any serious illness, and who was in apparent good health and spirits at the time he went to work on the day of his death; that he had not complained on that day of feeling badly and had gone about his work as usual; that in the prosecution of that work he took into his hands an electrical drill, charged with a current of electricity, and that immediately thereafter he was seen falling from a standing position at the workbench with the electrical drill still in his hands; that when he fell it lay on his chest, gripped in his hand; that the current was then cut off by a negro helper, and de-

cedent was then found to be dead or in a dying condition; that a pulmotor and other methods of artificial respiration were used to revive him but without success. There was evidence offered by defendant that no burns were found on his body, and one doctor testified that in all the cases he had ever seen where death resulted from electricity, there were evidences of burns; that he had probably seen half a dozen deaths from electricity in his life; that he did not know whether a current of 110 or of 220 or of 550 volts of electricity will kill a man, that he knew that 1,700 volts is what is used for execution, but up to that point he did not know just what would kill a man; that assuming that 110 volts would kill, he did not know whether momentary contact with a current of 110 volts would burn or whether 220 volts would burn; that he did not know what voltage it takes to burn; * * * that he did not know just what voltage it takes to kill or what voltage it takes to burn; and that he had spoken entirely from his observation in seeing half a dozen men who were killed by electricity and who were burned; that assuming that immediately before this man died he came in contact with a current óf electricity, and up to that time had been doing his work apparently in good health, had not been sick and immediately after that he came in contact with a current and died, he would say that it would be a question of doubt in his mind whether he was killed by electricity; that electricity is one of those things you can't see; and that you can't tell what it is going to do. The witness further testified that he was not an electrical expert.

"Another physician testified that death can be caused by electricity without burns, and that whether burns will appear depends on the voltage, the contact, and a number of other conditions. This witness stated that assuming DeWitt had come in contact with an electrical current immediately preceding his death, he would say from the examination which he made that electricity could have caused such a death; that high voltage is a relative term, 110 volts will be high under some conditions; for instance, where the path that the current travels was through a very small circuit. A current that would kill is high in a relative sense, and depends upon the path the current passes through and how close it is to the heart or other vital parts; 110 to 120 volts, which is sufficient to cause the death of a man, is sufficient to produce a burn under certain conditions."

Lyons, Chamberlain & Courtney, of Mobile, for petitioner.

The burden is upon plaintiff to prove, by direct evidence, not mere conjecture òr surmise, that the accident arose out of and in the course of employment. Wisconsin S. Co. v. Ind. Comm., 288 Ill. 206, 123 N. E. 295; Chaudier v. Stearns & Culver Lbr. Co., 206 Mich. 433, 173 N. W. 198, 5 A. L. R. 1673; McCoy v. Michigan Sewer Co., 180 Mich. 454, 147 N. W. 572, L. R. A. 1916A, 323. The grandmother of deceased is not entitled to compensation. Code 1923, § 7556; Ex parte Central I. & C. Co., 209 Ala. 22, 95 So. 472.

Compensation ceases upon the death of the dependent. Code 1923, § 7564.

Harry T. Smith & Caffey, of Mobile, opposed.

The appellate court is only concerned with the question whether there was any evidence to support the trial court's finding. Ex parte Woodward Ir. Co., 211 Ala. 111, 99 So. 649. The evidence for plaintiff was sufficient to make out a prima facie case, under the doctrine of res ipsa loquitur. Brown v. Mobile E. Co., 207 Ala. 61, 91 So. 802; Town of Athens v. Miller, 190 Ala. 82, 66 So. 702; Ala. City Ry. Co. v. Appleton, 171 Ala. 330, 54 So. 638, Ann. Cas. 1913A, 1181; Lawson v. Mobile E. Co., 204 Ala. 318, 85 So. 257; State ex rel. Fleckenstein v. Dist. Court, 134 Minn. 324, 159 N. W. 755; Bingham Mines Co. v. Allsop, 59 Utah, 306, 203 P. 644; Wasson Coal Co. v. Ind. Comm., 296 Ill. 217, 129 N. E. 786; Paton v. Port Huron Ins. Co., 214 Mich. 130, 182 N. W. 639. The allowance made by the trial court was correct. Code 1923, § 7560; Ex parte Woodward Ir. Co., supra; Marcum v. Hickle, 144 Tenn. 460, 234 S. W. 321; Bohlen-Huse Co. v. McDaniel, 148 Tenn. 628, 257 S. W. 848. The death benefit is intended as an entirety to take care of all total dependents; shall be paid for entire period until exhausted. Cullen v. Panhandle Coal Co. (Ind. App.) 141 N. E. 647; Smith v. State High. Comm., 78 Ind. App. 301, 134 N. E. 225; Swift & Co. v. Ind. Comm., 309 Ill. 11, 140 N. E. 17.

SOMERVILLE, J. [1, 2] The trial court has made a fair statement of the evidence and we think it supports the finding and judgment of the court that the deceased workman came to his death by an accident arising out of and in the course of his employment.

The evidence shows a contact between a young and apparently vigorous man and an electrical appliance carrying a sufficient voltage, if short-circuited through his body, to cause his death. This contact, with its lethal potentiality, and with its actual sequence of instant death, presents, we think, a rational suggestion of cause and effect— a reasonable inference of causation, and not merely a permissible hypothesis leading to a conjectural and therefore unwarranted conclusion.

It is true that there is no evidence directly showing that the electrical appliance being used by the deceased was in such a condition as to permit the short-circuiting of the current; but the appliance was owned and operated by the defendant, and the circumstances of the workman's death at least imposed upon defendant the duty of showing that it was properly constructed and insulated, and incapable of communicating a current of deadly force to the workman's

body. See Lawson v. Mobile Electric Co., 204 Ala. 318, 321, 85 So. 257.

Under circumstances not materially different from those here shown, courts of high authority have affirmed the finding that the workman was killed by an electrical shock, and hence injured by an accident arising out of and in the course of his employment. State ex rel. Fleckenstein v. District Ct., 134 Minn. 324, 159 N. W. 755; Wasson Coal Co. v. Ind. Commission, 296 Ill. 217, 129 N. E. 786; Bingham Mines Co. v. Allsop, 59 Utah, 306, 203 P. 644; Paton v. Port Huron Ins. Co., 214 Mich. 130, 182 N. W. 639. We think the finding here was sufficiently supported by the evidence.

[3] Defendant takes exception to the allowance of $2 per week to the workman's grandmother—the theory being that a postponed class of dependents cannot have compensation concurrently with a preferred class even though the allowance to the preferred dependent does not exhaust the entire compensation for which the employer is liable, and, as a corollary to that contention, defendant excepts also to that part of the judgment which allows $10 per week to the grandmother in case the mother should die before the lapse of the 300 weeks' period of payments, the grandmother surviving.

Section 7553 of the Code of 1923 provides:

"Wife, child, husband, mother, father, grandmother, grandfather, sister, brother, mother-in-law and father-in-law who were wholly supported by the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his total dependents, and payment of compensation shall be made to them in the order named."

Section 7556 provides for the percentage of the deceased workman's wages to be paid to each class of the dependents named in section 7553, in particular:

"If the deceased employé leave no widow or child or husband entitled to any payment hereunder, but should leave a parent or parents, either or both of whom are wholly dependent on the deceased, there shall be paid, if only one parent, twenty-five per cent. of the average weekly earnings of the deceased, and if both parents, thirty-five per cent. [of such earnings]." If the deceased leave no widow, child, husband, or parent, surviving, "but leaves a grandparent, brother, sister, mother-in-law, [or] father-in-law, wholly dependent on him for support, there shall be paid such dependent, if but one, twenty per cent. of the average weekly earnings of the deceased, or if more than one, twenty-five per cent. [of such earnings], divided between or among them, share and share alike."

Section 7558 of the Code provides:

"The compensation payable in case of death to persons wholly dependent shall be subject to a maximum compensation of twelve dollars per week and a minimum of five dollars per week. * * * This compensation shall be paid during dependency, not exceeding three hundred weeks, payments to be made at the interval when the earnings were payable, as nearly as may be."

We think it is reasonably clear that these statutes do not intend that compensation shall be payable concurrently to more than one of the classes or grades of relatives provided for in section 7556. It is supplemented by section 7553, which makes clear the order in which they are entitled to receive compensation, especially, of course, in cases where there are more than one dependent of the same class, as father and mother, grandfather and grandmother, brother and sister, or father-in-law and mother-in-law.

The contrary view proceeds upon the erroneous assumption that section 7558 fixes $12 per week as the total compensation to be paid out to dependents, at all events, until it is exhausted. But, on the contrary, $12 is not fixed as the gross compensation to be paid by the defendant, but is merely a limitational restraint upon the percentages of weekly wages allowed to the several classes of dependents under section 7556. For example, if both father and mother of this workman had survived as total dependents, they would have been entitled to 35 per cent. of $40, his ascertained weekly wages, equal to $14 per week, but as this exceeds the maximum allowance of $12 per week, the joint award would have been restricted to that amount.

Counsel for appellee conceive that section 7560 of the Code justifies, and indeed requires, concurrent compensation to different classes, if the percentage of wages allowed as compensation to a prior preferred class is less than $12 per week. That section provides:

"Total dependents shall be entitled to take compensation in the order named in section 7553 above until the per cent. of the average weekly earnings of the deceased during the time and as specified in section 7558 shall have been exhausted; but the total compensation to be paid to all total dependents of a deceased employé shall not exceed in the aggregate twelve dollars per week, except as otherwise provided herein."

The meaning of this section is, in some respects, certainly not very clear. It refers to "the per cent. of the average weekly earnings of the deceased" as mentioned in section 7558, but that section contains no such mention. Most likely it intends to refer simply to the compensation as specified in section 7558; and its exhaustion as to quantity contemplates the payment of percentages to members of the same class in the order of their priority, while exhaustion as to time contemplates the payment to successive dependents of the percentage to which each is entitled, to the end of the payment period, when the prior preferred

dependent dies or marries within that period. This gives a consistent field of operation to the provision that "the total compensation to be paid to all total dependents of a deceased employé shall not exceed in the aggregate $12 per week, except as otherwise provided herein,"—that is, where, as frequently happens, several dependents of the same class or grade are concurrently receiving compensation.

So far as the instant case is concerned, by the express provision of section 7556, a dependent grandmother or grandfather is entitled to compensation only in case the deceased workman has left no dependent widow, child, husband, or parent, thus plainly negating the idea of concurrent compensation to the grandparent. This view of the statute was plainly declared by Thomas, J., arguendo, in Ex parte Central Iron & Coal Co., 209 Ala. 22, 24, 95 So. 472, though it was not involved in the decision. It follows from the considerations above stated that the trial court erred in ordering compensation of $2 per week paid to the grandmother, Carrie Holt.

The Tennessee cases cited in brief for appellee (Marcum v. Hickle, 144 Tenn. 460, 234 S. W. 321, and Bohlen-Huse Coal Co. v. McDaniel, 148 Tenn. 628, 257 S. W. 848) were based on a special provision of the Tennessee law (Pub. Laws 1919, c. 123, § 30 [18]), viz. that "actual dependents shall be entitled to take compensation in the order named * * * until fifty per centum of the monthly wages of the deceased during the time specified in this act shall have been exhausted," a provision not found in our law, wherein a maximum compensation of $12, and a minimum compensation of $5, a week, does not furnish any definite percentage, which can be apportioned until exhausted.

[4, 5] In section 7556 it is provided that "If the compensation is being paid under article 2 of this chapter to any dependent, such compensation shall cease upon the death or marriage of such dependent." The same provision is found in section 7564. Counsel for appellant contend that the effect of this provision is, not merely to stop the payment of compensation to the deceased dependent's personal representative or heirs, but to stop its payment altogether, thereby operating as a discharge of the employer from further liability to other dependents surviving.

This theory is wholly inconsistent with the general structure, design, and language of our Compensation Law—particularly of the provisions of section 7560, which we have already discussed and construed ante. It would seem that the quoted provision of section 7556 was not necessary, so far as the death of the receiving dependent is concerned, and it was no doubt inserted in the statute, as a matter of precaution merely, to prevent claim to the lapsed compensation by the personal representative or heirs of the deceased dependent. See Swift v. Industrial Commission, 309 Ill. 11, 140 N. E. 17; Smith v. State, etc., Commission, 78 Ind. App. 301, 134 N. E. 225; Cullen v. Panhandle Coal Co. (Ind. App.) 141 N. E. 647.

We think it is clear that compensation must be paid, conformably to sections 7556, 7553, 7558, and 7560, so long as any named dependent survives, throughout the entire period of 300 weeks. But manifestly the percentage payable will vary with the class receiving the compensation, as specified by section 7556. If, in this case, the grandmother should survive the mother, she would be entitled to 20 per cent. of $40, equal to $8 per week, and not to $10 per week as declared by the trial court. In this respect the judgment is erroneous, and it will be corrected accordingly.

The judgment will be corrected also by excluding the grandmother, Carrie Holt, from receiving present compensation. As corrected, the judgment will stand as a judgment for the payment of compensation to the mother, Alma 'DeWitt, at the rate of $10 per week, for 300 weeks, if she shall live so long; and if she should die within that period, then compensation shall be paid for the remainder of the period to Carrie Holt, at the rate of $8 per week.

Corrected and affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.